# Vormus *v.* Tennessee Coal, Iron & Railroad Company.

*Action by passenger to recover damages for injuries received in collision.*

1. *Passenger train of one road upon track of another without authority a trespasser* —When the yardmaster of a private corporation organized for mining coal, and ore, which owns a railroad used exclusively for transporting such productions, without authority from the officers of such corporation, permits an excursion train belonging to another corporation to go over its road, the persons on such excursion train are trespassers, and the owner of such road is not responsible for injuries received by a passenger on such train caused by simple negligence of its employees.

2. *Degree of negligence a question for the jury* —In such case if it is shown that at the time the yard-master gave permission for the train to go over defendants road, it had escaped his recollection that one of defendant's trains was running on the same track, but he did all in his power to have the excursion train return to a place of safety, in

[Vormus v. Tennessee Coal, Iron & R. R. Co.]

time for the collision to have been avoided, but the negligence of the officers of the excursion train caused the accident, it is properly left to the jury to decide whether the yard-master was guilty of wanton or intentional misconduct.

APPEAL from Jefferson Circuit Court.

Tried before Hon. JAMES B. HEAD.

This action was brought by Albert Vormus against the Tennessee Coal, Iron & Rail Road Company, for damages caused by alleged negligence of the defendant. Upon the introduction of the evidence, the plaintiff separately excepted to each portion of the oral charge of the court following : (1) "That the excursion train being upon the defendant's tracks without the knowledge or permission of defendant, or some officer or agent thereof authorized to give such permission, the persons on the train occupied towards the defendant the relation of trespassers on its property ; and defendant owed them no duty, except the duty of not wantonly, recklessly or intentionally doing them injury." (2) " 'Wanton,' 'reckless,' or 'intentional,' as I use these terms, mean that entire want of care which evinces a disregard of the lives or safety of others. It is insisted by plaintiff's counsel that McKenzie, knowing defendant's train was coming out from Ensley, suffered himself to forget the fact, and suffered the excursion train loaded with many passengers, to start off on the same track, and counsel insists that such conduct showed that gross want of care on his part which I have defined as 'wanton,' 'reckless,' or 'intentional.' I leave that question to you to decide, gentlemen, and charge that if such was the character of his conduct, and if such conduct was the proximate cause (as I shall presently define 'proximate cause') of plaintiff's injury, then plaintiff is entitled to recover ; but if such was not the character of his conduct, and if he was guilty of simple negligence, only, then the plaintiff is not entitled to recover." (3) "Although McKenzie may have been guilty of wanton, reckless, or intentional misconduct, yet if he and other servants of defendant had the means and opportunity to fully undo and repair the wrong he had done, and if they did fully undo and repair it, and plaintiff's injury resulted directly from the failure of the persons in charge of the excursion train to perform their duty, then McKenzie's wrong doing cannot be said to have been the proximate cause of the injury, but the proximate cause thereof was the failure of those in charge of the train to do their duty ; and, defendant not being responsible for the negligence of

[Vormus v. Tennessee Coal, Iron & R. R. Co.]

those in charge of the train, their negligence would give no cause of action against defendant, and plaintiff cannot recover." "If they were, under the principles I have given you, so guilty of negligence which directly caused the injury, and if the danger to plaintiff by reason of the wrongful conduct of McKenzie was entirely removed if the acts of McKenzie and other servants of defendant, by those in charge of the train had done their duty, then you must find for the defendant." The court then, at the request of the defendant, gave the following written charge: "If the jury believe from the evidence that the train of cars upon which plaintiff was rididing was being operated by the Birmingham Mineral Railroad, and if the jury further believe that said Birmingham Mineral Railroad ran said train of cars unlawfully upon defendant's track from the town of Ensley to Pratt Mines, Ala., and presented itself to yard master McKenzie, at Pratt Mines, as a trespasser upon defendant's track, and if the jury should further believe that McKenzie had not the authority to direct its motion, then the defendant owed it the duty, only, not to be guilty of wanton, reckless, or intentional negligence." The plaintiff duly excepted to the giving of this charge, and also separately excepted to the refusal of the court to give each of the following written charges requested by him: "I charge the jury that gross negligence on part of defendant is not required, to entitle plaintiff to recover, provided the defendant's negligence was the sole, proximate cause of the injury complained of." (2) "The court charges the jury, that if they believe from the evidence that the negligence of McKenzie contributed proximately to the injury complained of, then the concurring contributory negligence of the Birmingham Mineral Railroad Company crew would be no defense to this action."

WEATHERLY & PERCY, and BOWMAN & HARSH, for appellants, insisted that plaintiff was not a trespasser, citing *R. R. v. Yarborough* 83 Ala. 241; *R. R. v. Frazier*, 93 Ala. 45; that the negligence of the officers of the excursion train was not imputable to plaintiff; *Elyton Land Co. v. Mingea*, 89 Ala. 521; *Ga. Pac. Rwy. v. Hughes*, 87 Ala. 610.

R. H. PEARSON, and J. F. MARTIN, for appellee. No brief came to the hands of the reporter.

COLEMAN, J.—The defendant is a private corporation, engaged in the business of mining coal and iron, and owned and operated its railroad line and trains in promotion of its own private interest. The transportation of passengers was

[Vormus v. Tennessee Coal, Iron & R. R. Co.]

no part of its business.   The plaintiff was a passenger on an excursion train of the Birmingham Mineral Railroad Company.   On the arrival of the excursion train at Ensley, Alabama, the excursion train left the track of the Birmingham Mineral and entered upon the track of the defendant corporation, and proceeded upon this line until it reached the office of one McKenzie, a yard-master of the defendant.   Here they obtained permission from McKenzie to run the excursion train upon the railway track of the defendant to certain designated points.   While upon the track of the defendant under permission obtained from McKenzie the yard-master, a train of the defendant, was discovered approaching on the same line from an opposite direction.   A collision of the two trains, being imminent and apparently unavoidable, plaintiff attempted to escape by jumping from the excursion train, upon which he was at the time as a passenger, and sustained the injury complained of.

There is no pretense that the employees of the defendant, (other than McKenzie) upon and operating the train of the defendant company had any knowledge of the presence of the excursion train upon the track, or that the employees in charge of the defendant's train were negligent.   The negligence alleged as the cause of the injury, is that of McKenzie the yard-master, in permitting the excursion train to proceed upon defendant's track at a time when there was danger of a collision, and without notice.   The evidence tends to show, that defendant's train was moving under orders given by McKenzie the yard-master, before he granted leave to the excursion train to use the track of the defendant, but that the giving of such order had escaped his recollection at the time.   The evidence further shows, that before the excursion train had proceeded one hundred yards the yard-master McKenzie calling to mind that he had ordered the train of the defendant to proceed to Ensley, signaled the excursion train to stop and return.   The evidence is conflicting as to whether the officers in charge of the excursion train had time after receiving the signal to return by the exercise of reasonable diligence, could have returned to a place of safety and avoided the danger.   The first question presented for consideration is, whether the excursion train was rightfully upon the defendant's track, or was it there without legal authority, and as a trespasser,   We hold the uncontradicted evidence shows that the defendant was a private corporation organized for the purpose of making iron and mining coal, that in this business it owned and operated its line of railroads, which were used, exclusively for private purposes in

transporting its coal and ore from its mines to its furnaces, and not as a common carrier,—that McKenzie as yard-master had general control of defendant's tracks and the movement of the defendant's trains thereon, but that he had no authority to authorize or permit the excursion train to go upon or over defendant's tracks, and that the officers of defendant who were authorized to permit the use of its tracks by trains of other roads had given no authority in this instance, and no knowledge that the excursion train was thus using its tracks. It is a general principle of law and one which prevails in this State, that railroad corporations are liable for the erroneous advice and direction given by its agents in charge.—*S. & N. Railroad Co. v. Huffman,* 76 Ala. 498, but this principle in its application, is limited and qualified by the controlling principle that the agents are acting within the scope of their authority, or when dealing with the public or strangers who have no notice of the extent of their authority, are acting apparently within the scope of their authority. That McKenzie went beyond his authority in granting permission to the excursion train to use the track of the defendant corporation is clearly and indisputably establishd. Did the yard-master, McKenzie, having the right to control the tracks and trains of the defendant, for their own private purposes, act apparently within the scope of his authority, in such sort, as to bind the defendant for his negligence? We are clearly of opinion that he did not. It is not the law presumably known to all men, or to the courts judicially, that a yard-master as such of one railroad, even when engaged in the transportation of passengers, has authority to lease or grant the use of its tracks for a time, or temporarily, for pay or gratuitously, to another railroad company. Much less, where the proof shows, as it does in this case, that the defendant did not carry passengers and was not a common carrier, but was engaged in mining coal and making iron, and used its tracks for the sole purpose of transporting coal and ore in the prosecution of its private business. Our conclusion is that the excursion train was upon defendant's tracks without lawful authority or permission, and that the defendant could not be held responsible for injuries resulting from the simple negligence of McKenzie or its employees, operating its train. The trial court left it to the jury to say, whether McKenzie's conduct was so grossly negligent as to be the equivalent of wanton and willful or intentional wrong. Under the facts of this case, the charge was as favorable to the appellant as they had the right to demand. The evidence shows without controversy that the officers in

[Vormus v. Tennessee Coal, Iron & R. R. Co.]

charge of and operating defendant's train had no notice whatever that the excursion train was on the same track, and it is not pretended that they were guilty of any negligence whatever. It is further shown that McKenzie did not and could not communicate with them after giving the order to proceed with defendant's train to Ensley. If McKenzie, after the excursion train started upon defendant's track, did all in his power by signal and warning to have the excursion train return to a place of safety, in time for the excursion train to have returned safely, and the accident was in fact the result of the negligence of the officers in charge of the excursion train, in not returning, and not in consequence of the wrong or neglect of McKenzie in the first instance in giving permission to use the track of the defendant, the defendant was not liable. The law is very clearly stated in the charge of the trial court, and on this phase of the evidence was favorable to the appellant. The principle of law applicable to the facts of this case, is quite different from that invoked by the appellant as declared in *Ga. Pac. Railroad Co. v. Hughes*, 87 Ala. 610; *Elyton Land Co. v. Mingea*, 89 Ala. 519; and others cited to the same effect. In the former case Hughes was a passenger on the East Lake Dummy Line. A collision occurred with the Georgia Pacific Railroad at a crossing of both roads. The defendant attempted to escape liability to plaintiff, upon the grounds that the East Lake Dummy Line was guilty of contributory negligence, and that such negligence was imputable to a passenger of the Dummy Line. The court repudiated the principle. The proof showed that plaintiff was a passenger rightfully on the Dummy Line. There was no question of trespass in the case. Both railroads were using their own right of way. If both were guilty of negligence in causing the injury to Hughes, he not being guilty of any negligence, might have a joint or separate cause of action against either or both roads, but that the negligence of the Dummy Line if guilty of any negligence could not be imputed to him as a passenger. This principle was followed in the *Elyton Land Co. case v. Mingea*, 89 Ala. *supra*. We adhere to the rule as declared in these cases, but it does not apply in the present case.

To other cases cited by appellant, *Ala. Gr. So. Railroad v. Yarborough*, 83 Ala. 241; *Wilton v. Mid. Railroad Co.*, 107 Mass. 108; and 2 Woods Railway Law, § 298, were cases, in which it was held, that the officers of the railroad were acting within the scope of their authority and for this reason the defendants were held liable for the negligence of their

[East Tennessee, Virginia & Georgia Railway Co. v. Holmes.]

agents. We have held that in the present case, McKenzie exceeded the scope of his authority. If this conclusion be correct, the authorities cited, by appellant, sustain our position. We are satisfied that we are correct in our conclusion.

There is no error in the record, and the judgment of the trial court must be affirmed.

Affirmed.