CHARLESTON & W. C. R. CO. v. ALWANG et al.

(Circuit Court of Appeals, Fourth Circuit. April 1, 1919.)

No. 1658.

1. RAILROADS ⟐350(7)—CROSSING ACCIDENT—SIGNALS FROM TRAIN—QUESTIONS OF FACT.

In an action for injuries to soldiers riding in an army truck, struck by a train at a crossing, where there was evidence that defendant's employés had disregarded Code Civ. Proc. S. C. 1912, § 3222, requiring bell and whistle signals to be given on crossing highways, the issue of defendant's negligence was for the jury.

2. NEGLIGENCE ⟐93(1)—NEGLIGENCE OF ARMY TRUCK DRIVER IMPUTABLE TO OCCUPANT.

The negligence of a sergeant, driving an army truck struck at a crossing, is not imputable to the soldiers riding in it; the sergeant running the truck at the command of the superior in one branch of the service, and the others being on the truck at the command of a superior in another branch of the service, so that they were not voluntarily riding together, and neither one having any authority over the other.

3. RAILROADS ⟐350(13)—CROSSING ACCIDENTS—QUESTION FOR JURY—WILLFUL NEGLIGENCE OF PERSON INJURED.

Evidence that soldiers, riding in an army truck struck by a train at a crossing, were racing with another truck just before the collision, *held* not to show as a matter of law that they were guilty of "gross or willful negligence," within Code Civ. Proc. S. C. 1912, § 3230, so as to bar recovery for injuries caused by failure to give statutory signals.

In Error to the District Court of the United States for the Western District of South Carolina, at Greenville; Joseph T. Johnson, Judge.

Action by Andrew A. Alwang and others against the Charleston & Western Carolina Railroad Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

T. P. Cothran, of Greenville, S. C., and F. B. Grier, of Greenwood, S. C. (Grier, Park & Nicholson, of Greenwood, S. C., Nichols & Nichols, of Spartanburg, S. C., and Cothran, Dean & Cothran, of Greenville, S. C., on the brief), for plaintiff in error.

Jesse W. Boyd, of Spartanburg, S. C. (Frank L. Tyson, of New York City, and Ben Hill Brown, of Spartanburg, S. C., on the brief), for defendants in error.

Before PRITCHARD and KNAPP, Circuit Judges, and CONNOR, District Judge.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KNAPP, Circuit Judge. In this grade crossing case the following facts appear: About a mile north of the town of Woodruff, S. C., the railway of plaintiff in error, hereinafter called defendant, crosses a public highway known as the Buncombe road. The crossing is elevated some 4 or 5 feet above the natural level of the highway, which is graded up to the rails on either side. At the time of the accident the crossing and approaches thereto were all in good condition. For several weeks before some army trucks, each with a complement of men, had been engaged in hauling wood from a point about 6 miles out on the Buncombe road to Woodruff, where the wood was loaded into cars for shipment to Spartanburg.

On the day in question, about 10 o'clock in the forenoon, two loaded trucks started for Woodruff, the first some three-quarters of a mile ahead of the other. The leading truck was operated by Sergeant Hurlbut, and on it were four privates. The second was operated by Sergeant Hoyt, with Corporal Alwang sitting at his left on the driver's seat, and Privates Martin, Keehner, Curtis, and O'Neals up on the load behind them. All the men were familiar with the crossing and had passed over it several times that morning. The Hoyt truck was traveling at greater speed, and overtook the Hurlbut truck about 300 feet from the crossing. Hurlbut presently kept to the left of the road, to allow Hoyt to pass, and they ran side by side for perhaps 100 feet, when Hurlbut slowed down and Hoyt went ahead, being then within a short distance of the crossing. At that moment a freight train running some 30 miles an hour, which probably had not been heard because of the noise made by the trucks, came to the crossing from the right; that is, from the direction of Woodruff. Hurlbut saw the train and stopped; but Hoyt, although he reduced speed going up the incline to the tracks, did not or could not stop in time to avoid a collision. The right front of the truck was struck by the locomotive, Martin was killed, and Alwang, Keehner, and Hoyt more or less severely injured.

The defendant claims that the trucks were racing but its testimony to that effect was contradicted by plaintiffs' witnesses. There was also some disagreement about the extent of obstructions to a view of the track as the crossing was approached. For a distance of approximately 30 feet from the rails the view was wholly unobscured, as all agree, and in that distance the truck, going at the speed described, could easily have been stopped. Further away, for a stretch of some 70 feet, the view was partially obstructed, or momentarily cut off, by a few scattering trees along the roadside or in the adjoining field. It is enough to say on this point that for a distance of at least 100 feet from the crossing Hoyt could have seen the train in question without much difficulty, if he had looked in that direction.

The plaintiffs rely upon sections 3222 and 3230 of the Code of South Carolina, the material parts of which read as follows:

"Sec. 3222. A bell * * * and a steam whistle shall be placed on each locomotive engine, and such bell shall be rung, or such whistle sounded * * * at the distance of at least five hundred yards from the place where the railroad crosses any public highway or street or traveled place, and be

kept ringing or whistling until the engine has crossed such highway or street or traveled place. * * * "

"Sec. 3230. If a person is injured in his person or property by collision with the engine or cars of a railroad corporation at a crossing, and it appears that the corporation neglected to give the signals required by this chapter, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, * * * unless it is shown that, in addition to a mere want of ordinary care, the person injured, or the person having charge of his person or property, was, at the time of the collision, guilty of gross or willful negligence * * * and that such gross or willful negligence * * * contributed to the injury."

[1] On the occasion under review the whistle was undoubtedly blown at the prescribed distance, giving the usual signal; but it was not blown after that, and the bell was not rung at all as the train came on to the crossing. This disregard of a statutory duty made a case for the jury on the issue of defendant's negligence, and their verdict for the plaintiffs is conclusive.

[2] In discussing briefly the remaining question, we shall assume that Hoyt, the driver of the truck, was guilty of such gross negligence as would bar recovery for any injuries he may have sustained. But his negligence, whatever its degree, was not imputable to the other men on the truck. They had no authority over him, nor he over them. All were soldiers under orders. Hoyt was running the truck at the command of a superior in one branch of service, and the others were on the truck at the command of a superior in another branch of service; that is to say, they were not voluntarily riding together, and therefore not under "mutual responsibility in a common enterprise," to quote a phrase from Schultz v. Old Colony Street Ry. Co., 193 Mass. 309, 79 N. E. 873, 8 L. R. A. (N. S.) 597, 118 Am. St. Rep. 502, 9 Ann. Cas. 402, in which the subject is exhaustively reviewed. This peculiar relation, or want of relation, between Hoyt and the other soldiers, differentiates the instant cases, as we think, from such a case as Davis v. C., R. I. & P. Ry. Co., 159 Fed. 10, 88 C. C. A. 488, 16 L. R. A. (N. S.) 424, where the plaintiff was riding in a buggy with his friend, who drove the horse, for the purpose of visiting a point of mutual interest, or Brommer v. Penn. R. Co., 179 Fed. 577, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924, in which it was held that Henderson, the guest of Brommer on a pleasure ride, was guilty of negligence which defeated his action, because, "being free from the engrossing work of operating the machine, and occupying a seat beside the driver, he was in an even better situation than Brommer to look out for the safety of the machine," or Hall v. West Jersey & S. R. Co., 244 Fed. 104, 156 C. C. A. 532, which was also the suit of a guest of the automobile driver and decided against the plaintiff on the authority of the Brommer Case, or the numerous state cases cited by defendant, in which persons voluntarily riding with the driver of a vehicle, for their mutual pleasure or advantage, and having equal opportunity to see and warn against the dangers of a railroad crossing, have been denied recovery on the ground of contributory negligence. But in our opinion the cases at bar are in a different category. These men were not on the truck for their own purposes or of their

own volition. They were there by compulsion, in obedience to military command, without freedom to act or direct, and it seems but reasonable to hold that they were not under the same obligation to be on the lookout or give needed warning as persons riding with a driver of their own accord, by his request or their desire, and at full liberty to take such action as emergency might require.

[3] Moreover, under the South Carolina statute above quoted, when a railroad company fails to comply with its provisions, the highway traveler injured at a crossing may recover compensation, unless it is shown that, "in addition to a mere want of ordinary care," he was "guilty of gross or willful negligence." And we are unwilling to say, taking into account all the circumstances of record, which need not here be recited, that the men for whom these suits are brought were guilty of gross or willful negligence as matter of law, even if it be true that Hurlbut and Hoyt were engaged in a race just before the accident. On the contrary, we think the jury had the right to find that they were wanting at most in ordinary care, and even to find that, as soldiers under orders, they were not wanting in such care as ordinarily prudent persons would exercise in like situation. From every point of view the facts are clearly more favorable to the plaintiffs than those appearing in the recent case of Southern Pacific Co. v. Wright, 248 Fed. 261, 160 C. C. A. 339, which holds that the question of the contributory negligence of an automobile passenger, injured by the reckless conduct of its driver, was properly submitted to the jury.

It follows that the rulings of the trial court, refusing to direct a verdict for defendant and rejecting certain requested instructions. were not erroneous, and the judgment will therefore be affirmed.